UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JERRY DON JOHNSON,

              Plaintiff,              Case No. 1:14-cv-199

v.                                        Honorable Paul L. Maloney

DANIEL HEYNS et al.,

              Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. §§ 1983 and 1985. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Smith, Sanchez, Lockhart, Russell and Pettus. The Court also will dismiss all of Plaintiff's claims against Defendant Kipp, with the exception of his Eighth Amendment claim. The Court will order service of the Eighth Amendment claim on Defendant Kipp.

**Discussion**

I. Factual allegations

Plaintiff Jerry Don Johnson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, though the events about which he complains occurred while he was housed at the Carson City Correctional Facility (DRF). Plaintiff sues the following Defendants: MDOC Director Daniel Heyns; MDOC Hearings Administrator Richard D. Russell; MDOC Grievance Specialist Sean Lockhart; DRF Warden Willie Smith; DRF Deputy Warden Tim Kipp; DRF Inspector Jubentino Sanchez; and DRF prisoner Reginald Pettus.

According to the complaint, on November 3, 2012, Defendant Pettus assaulted Plaintiff while Plaintiff was sitting in the Unit-500 dayroom. Defendant Pettus punched Plaintiff in the head and face, causing cuts to the inside of Plaintiff's upper and lower lips, for which Plaintiff was treated in healthcare. Defendant Pettus received a major-misconduct ticket for assaulting a prisoner.

On November 15, 2012, Plaintiff saw Pettus being released from segregation and placed in Unit 1200. Plaintiff sent a kite to Defendant Kipp, asking Kipp why Pettus was being released from segregation after having assaulted Plaintiff. Defendant Kipp spoke with Plaintiff on November 20, 2012, stating "I thought this was over someone running their mouth? Was it not?" (Compl. ¶ 15, docket #1, Page ID#5.) Plaintiff complains that, under MICH. DEP'T OF CORR., Policy Directive (PD) 03.03.110 ¶ E(1), a Special Alternative Offender Notice (SPON) should have been issued against Defendant Pettus.

While Plaintiff was on his way to the dining hall on November 24, 2012, Pettus, wearing a mouthguard and balling his hands in fists, jumped out from behind two other prisoners.

Plaintiff was forced to protect himself by fighting back. Officers split up the fight and escorted Pettus to segregation. Plaintiff was taken to healthcare, where he was given medical treatment for a cut on his bottom lip and a red mark under his eye. Plaintiff was then given a fighting ticket and was placed on toplock.[1]

That same day, Plaintiff filed a grievance against Defendant Kipp, alleging that Kipp had placed Plaintiff's life in danger by releasing Pettus from segregation and ignoring the risk to Plaintiff. Defendant Sanchez called Plaintiff out on December 10, 2012, asking him to sign off on the grievance. Sanchez informed Plaintiff that Pettus had been released because he had only been on toplock, not in segregation. Sanchez informed Plaintiff that his grievance would not go anywhere and that it was pointless to pursue the grievance. Sanchez denied the grievance at Step I.

Plaintiff appealed the grievance decision to Step II on December 17, 2013. Although Defendant Kipp was named in the grievance, Kipp nevertheless reviewed the grievance at Step II. On January 7, 2013, Kipp denied the grievance, stating that Plaintiff was given the chance to be placed in protective housing on November 15, 2012, when Pettus was released from toplock, but Plaintiff rejected the offer. Plaintiff denies that he refused protective housing.

On January 14, 2013, Plaintiff filed a Step-III grievance. In his grievance, Plaintiff complained that Defendant Kipp had violated PD 02.03.100 (Attach. A, #47), because his Step-II response amounted to filing a false report and falsifying documents. Defendant Lockhart denied the Step-III grievance, and Defendant Russell approved the denial. Defendant Lockhart mailed the Step-III grievance response to Plaintiff on April 30, 2013. On June 19, 2013, after he received a copy of the Step-III denial, Plaintiff sent a complaint about the events to Defendant Heyns.

---

[1] A prisoner on toplock is restricted to his cell, room or bunk area and loses a variety of privileges. MICH. DEP'T OF CORR., Policy Directive 03.03.105 ¶¶ MMM-OOO.

Plaintiff alleges that Defendants violated the Eighth Amendment by unreasonably subjecting him to danger. He also alleges that Defendants' conduct amounted to gross negligence and wanton and willful conduct, as defined by 28 U.S.C. § 1343, thereby preventing Defendants from asserting the defense of governmental immunity. In addition, he claims that Defendants acted pursuant to a policy and conspired to deprive him of his Eighth Amendment and due process rights.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff alleges that Defendants conspired under 42 U.S.C. §§ 1983 and 1985(3)[2] to violate his rights under the Eighth Amendment and the Due Process Clause.[3] A civil conspiracy under § 1983 is "'an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Similarly, to state a claim for

---

[2]Plaintiff argues that 28 U.S.C. § 1343 bars Defendants from claiming governmental immunity as a defense against allegations demonstrating the existence of wanton or willful misconduct and gross negligence. Section 1343, however, merely grants this Court jurisdiction to hear civil actions claiming violations of 28 U.S.C. § 1985. The statute contains no provision relevant to defenses.

[3]Plaintiff also invokes 18 U.S.C. §§ 241 and 242 as the statutory source of his conspiracy claim. Sections 241 and 242, however, are statutes governing offenses under the criminal code of the United States. Plaintiff has no private right of action to enforce the criminal code. *Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2008).

conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). Under both § 1983 and § 1985, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff provides no allegations establishing a link between the alleged conspirators or any agreement between them. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct

may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Plaintiff therefore fails to state a plausible claim of conspiracy under either § 1983 or § 1985. In addition, Plaintiff's allegations under § 1985 also fail because he fails to allege the existence of any class-based animus.

For both reasons, Plaintiff's conspiracy claim must be dismissed.

### B. Policy

Plaintiff next alleges that Defendants acted according to a prison policy. Although Plaintiff's allegations about the alleged policy are unclear, he presumably suggests that, because Defendants all conspired together, they must have acted pursuant to a policy or custom.

Plaintiff does not explain his reasons for alleging an unconstitutional policy. Ordinarily, allegations about the existence of a policy are made in an attempt to hold a governmental entity liable for a constitutional injury. For example, a municipality or county may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

However, to the extent that Plaintiff attempts to hold the MDOC or the State of Michigan liable for damages for the actions of the named Defendants, his action must be dismissed. Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

Nevertheless, an official-capacity action seeking prospective injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar injunctive relief against a state official). Plaintiff has sued all Defendants in both their individual and official capacities. Plaintiff, however, does not seek prospective injunctive relief; he only seeks damages for Defendants' alleged violations of his rights.

Moreover, even if he sought injunctive relief, he would not be entitled to that relief on the facts of this case. Plaintiff alleges no fact suggesting the existence of a policy, beyond his declaration that all Defendants were part of a conspiracy. In fact, Plaintiff specifically contends that Defendants' conduct was inconsistent with MDOC policies. His allegations therefore fall short of demonstrating the existence of a contrary policy requiring the issuance of an injunction.

For all these reasons, Plaintiff's complaint about the existence of an unconstitutional policy must be dismissed.

### C. Supervisory Liability

Plaintiff's only allegations against Defendants Heyns, Smith, Sanchez, Lockhart and Russell are that they failed to investigate or properly decide his grievances or that they failed to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to

allege that Defendants Heyns, Smith, Sanchez, Lockhart and Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### D. Due Process

Plaintiff broadly asserts that Defendants deprived him of due process because they damaged his reputation and integrity, which, he alleges, are liberty interests protected by the Due Process Clause. Although Plaintiff fails to identify the particular conduct on which he bases his due process claim, the Court will consider each of the possible claims implicated by Plaintiff's factual allegations.

#### 1. Procedural Due Process

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law. *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

To the extent that Plaintiff claims that Defendants' acts violated MDOC rules, he fails to state a § 1983 claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Next, Plaintiff suggests that he was deprived of due process during the grievance procedure. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Finally. Plaintiff arguably claims that his major misconduct ticket for fighting was "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.

The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov.

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. He acknowledges that his only punishment for fighting was placement in toplock. Such a temporary and minor restriction on his privileges falls far short of the segregation found insufficient in *Sandin*. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

In sum, the Court can identify no constitutionally protected interest that was affected by Defendants' conduct. As a consequence, he fails to state a procedural due process claim against any Defendant.

2.     Substantive Due Process

Plaintiff arguably asserts that Defendants' failure to protect him from Defendant Pettus constituted a violation of his substantive due process rights under the Fourteenth Amendment. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of

preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable seizure of free citizens, and the Eighth Amendment provides the standard for the use of force on prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his failure-to-protect claim. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). Because the Eighth Amendment supplies an explicit textual source of claims governing a prisoner's health and safety, the concept of substantive due process is inapplicable to claims involving the treatment of prisoners. *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).

### E. Defendant Pettus

Plaintiff names as a Defendant another prisoner, Reginald Pettus. As previously discussed, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48 *Dominguez*, 555 F.3d at 549; *Street*, 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff fails to present any allegations by which the conduct of Defendant Pettus, another inmate at DRF, could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against Defendant Pettus.

### F. Eighth Amendment

Upon review, the Court concludes that Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Defendant Kipp.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Smith, Sanchez, Lockhart, Russell and Pettus will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss all of Plaintiff's claims against Defendant Kipp, with the exception of his Eighth Amendment claim. The Court will serve Plaintiff's Eighth amendment claim against Defendant Kipp.

An Order consistent with this Opinion will be entered.


Dated:  March 19, 2014   /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge